E. B. MILLER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 3465. Promulgated August 1, 1927.

1. Reasonable allowance for depreciation of oil-well drilling tools and equipment determined.

2. The evidence is insufficient to show that Commissioner's determination that petitioner received a dividend from the Liquefied Petroleum Gas Co. is erroneous.

*Charles H. Garnett, Esq.,* and *E. R. Willison, C. P. A.,* for the petitioner.

*Robert A. Littleton, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income tax for the year 1919, amounting to $683.84. The errors assigned are in substance: (1) That the rate of depreciation allowed by the Commissioner on oil-drilling tools and equipment is too low; (2) the inclusion in income of a distribution received as a stockholder of the Bishop Oil Co. which was a return of capital; (3) the inclusion in income of an alleged dividend from the Liquefied Petroleum Gas Co. which was not in fact received. The second assignment was abandoned at the hearing.

### FINDINGS OF FACT.

The petitioner resides in Tulsa, Okla. He is an oil-well driller and has been actually engaged in drilling wells for over twenty-eight years. In 1919, he was a member of two partnerships, each of which carried on the business of drilling wells.

One of the partnerships was known as Miller & Tyrrell, and the petitioner had a one-half interest therein. This firm owned drilling tools and equipment consisting of boilers, engines, drills, cables and other items, of a total book value on January 1, 1919, of $10,521.22. During the year 1919, additions were made thereto costing $930. On November 1, one "string" of drilling tools which theretofore cost $2,862.80, was withdrawn from the partnership and turned over to another individual to use on shares. The Commissioner determined a depreciation allowance of $1,929.72. The petitioner claims a reasonable allowance would be $2,588.51.

The other partnership was the Roland Miller Drilling Co. and the petitioner's interest was three-eighths. This firm had an investment January 1, 1919, in drilling equipment of $3,200, to which additions costing $241.53 were made during the year. The Commissioner allowed depreciation of $734.93; the petitioner claims $830.19.

The petitioner kept no record of the useful life of individual tools. The useful life of the various tools varied greatly in length in different territory, depending upon the character of the earth strata and the depth of the holes. Under some conditions a string of tools would last not more than two years; under other conditions they could be used from five to seven years. It also happened occasionally that tools would break or be lost in a hole while comparatively new. During 1919 the partnerships operated in the Drumright field, where deep drilling was done, and experience showed the average life of tools in that region was about four years. We find a reasonable rate for depreciation in 1919 is 25 per cent.

The petitioner in 1919 owned stock (amount not shown) of the Liquefied Petroleum Gas Co. Prior to 1919 he had purchased $10,000 par value of such stock, for which he gave his note for $10,000. The note was paid by dividends being credited against it by the company and when so paid, the note was canceled and returned to petitioner. The testimony does not disclose when these credits were made. On January 8, 1919, the stockholders authorized an increase in capital stock from $50,000 to $1,000,000. Book entries dated August 1, 1918, show $1,000,000 capital stock, against which are offset these items:

| | |
|---|---:|
| Surplus | $177,887.82 |
| Gas contracts | 489,592.18 |
| Bills payable | 316,108.71 |
| Dividends | 16,411.29 |

The following statements appear in a revenue agent's report of an investigation of the Liquefied Petroleum Gas Co. which was introduced in evidence by petitioner:

Bills payable, $316,108.71, represented the bills payable of the corporation which the stockholders assumed as at August 1, 1918.

Dividend, $16,411.29, represents a debit to the dividend account in the books.

On Dec. 31, 1918, a stockholders' meeting made a 5% assessment on the $1,000,000 stock outstanding and the following entry was made in the books:

| | | |
|---|---:|---:|
| Accounts receivable | $50,000 | |
| Dividend | | $50,000 |

\*       \*       \*       \*       \*       \*       \*

Although the stockholders were to assume them, bills payable, $316,108.71, and interest on them were actually paid by the corporation and the transactions as well as the assessment of $50,000 were covered by debit and credit entries to the Dividend account.

\*       \*       \*       \*       \*       \*       \*

No money was ever paid into the corporation by any of the stockholders, and the total invested capital for 1918 and 1919 was represented by the earned surplus of the corporation as at the beginning of each year.

Additional stock was issued to the stockholders in 1918 and 1919. The stockholders assumed the bills payable of the corporation and the capital stock account was credited with the amount thereof. The bills, however, were paid by the corporation and the amount was charged to the dividend account.

The Commissioner included in petitioner's income $6,339.74, as dividends received from the Liquefied Petroleum Gas Co. on account of the credits to dividend account above referred to. The petitioner received in 1919 three or four small dividends in cash, aggregating about $218, which he reported in his income-tax return.

### OPINION.

LOVE: As appears in the findings of fact, we have found that 25 per cent is a reasonable allowance for depreciation of the drilling tools and equipment. There should be subtracted from the amount to be used as the basis for depreciation allowance for 1919, the cost of the drilling tools withdrawn for such part of the year as they were used by other persons.

The only other question is whether or not the petitioner received from the Liquefied Petroleum Gas Co. the dividend which the Commissioner has added to his income. He did not receive the amount in cash. The testimony relating to the affairs of this corporation is indefinite, but it does appear that stockholders received additional stock in 1919 for which they paid no money and that they did assume obligations of the corporation. It appears that the assumption of the obligations of the corporation by the stockholders was the consideration for the stock. The testimony shows that these obligations were thereafter discharged, not by the stockholders but by the corporation and the latter charged the amount thereof to the dividend account. This testimony, which was offered on behalf of the petitioner not only does not sustain his contentions, but tends to support the Commissioner's position, and his determination on this point is therefore affirmed.

*Judgment will be entered on 20 days' notice, under Rule 50.*

Considered by SMITH and LITTLETON.